# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA BURNEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV 14-374-RAW-KEW |
| | ) |
| DEBBIE ALDRIDGE, Warden, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is a pro se prisoner in the custody of the Oklahoma Department of Corrections who currently is incarcerated at Mabel Bassett Correctional Center in McLoud, Oklahoma. She is attacking her conviction in Wagoner County District Court Case No. CF-2011-88B for First Degree Murder. She sets forth the following grounds for relief:

I. The uncorroborated testimony of accomplices Michelle Burney and Michael Richardson was insufficient to convict Petitioner of First Degree Malice Aforethought Murder.

II. The State failed to disclose exculpatory impeachment evidence for the State's key witness and failed to correct the witness's false testimony.

III. Petitioner's rights to due process and a fair trial were violated by the admission of improper character evidence.

IV. The admission of gruesome photographs deprived Petitioner of her right to a fair trial and due process of law.

V. The trial court abused its discretion by failing to issue defense counsel's proposed instruction on witness credibility.

VI. The accumulation of errors deprived Petitioner of a fair trial.

The respondent concedes that Petitioner has exhausted her state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the Court for consideration in this matter:

A. Petitioner's direct appeal brief.

B. The State's brief in Petitioner's direct appeal.

C. Opinion affirming Petitioner's judgment and sentence. *Burney v. State*, No. F-2012-409 (Okla. Crim. App. Mar. 31, 2014).

D. Findings of Wagoner County District Court in response to questions from the Oklahoma Court of Criminal Appeals.

E. State court record.

In addition, Petitioner filed a reply to the Respondent's response to the petition.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

The Oklahoma Court of Criminal Appeals ("OCCA") set forth the facts of this case in Petitioner's direct appeal:

> Burney was married to Arthur Burney, and lived in a rural area near Coweta, Oklahoma, in a triple-wide manufactured home. Their daughter, Michelle, was fourteen years old at the time of the crime. Burney began an affair with Jeff Wilke in 2010. Although Arthur was alive, Burney told Wilke that Arthur had died earlier that year. After Arthur took a bad fall in September 2010 Burney and Michelle began to say they wished Arthur was dead. Over the next few months, they attempted unsuccessfully to poison Arthur and began offering to pay if someone would kill him. Through a website, Michelle met seventeen-year-old Michael Richardson, who lived in Oklahoma City. On February 15, 2011, Burney and Michelle met Richardson near his Oklahoma City school. Richardson gave Michelle three morphine pills, to be used to murder Arthur. The women returned to Coweta. Although Arthur took the pills, the murder attempt was unsuccessful. On February 17, 2011, Michelle called Richardson and offered him $6,000, plus marijuana and sexual intercourse with her, if he and two friends, Zach Hardin and Wesley Slemp, would kill Arthur.
>
> Burney drove to Oklahoma City on February 18, 2011, with Michelle in a black rented Chevy Aveo. They picked Richardson up, and got more pills from Slemp and Hardin. The Burneys and Richardson returned to the Burneys' trailer house near Coweta that afternoon. Burney gave Richardson a .22 rifle, and he and Michelle went out on the property to practice shooting. Shortly before 5:00 p.m. Burney texted Michelle "Hes here" [sic]. Michelle locked Richardson in the barn tack room to wait for Arthur. She returned briefly with Richardson's cell phone, telling Richardson that if he did not kill Arthur, Arthur would kill him, and Michelle would kill Arthur; she locked him in the tack room and left. When Arthur entered the barn, unlocked the tack room, and opened the door, Richardson shot him in the face. Arthur fell down and died on the tack room floor. The cause of death was a small caliber gunshot wound to the head.
>
> Richardson communicated with Michelle by phone. He returned to the locked

and deserted house, slid the rifle under the trailer skirting, and met the Burneys at the end of the driveway. He told them Arthur was dead. Burney drove the teenagers to a mall and had dinner with Wilke; at about 7:30 p.m. Burney and the teenagers returned to her house. Burney went to the barn, found Arthur, and called 911 shortly after 8:00 p.m. Horton, a Wagoner County Sheriff's Deputy, responded. Burney had moved Arthur's body, at the direction of the 911 operator, when she attempted to revive him. There was a great deal of blood on and near Arthur, but no injury was immediately apparent. The gunshot wound to Arthur's head was discovered during the autopsy. At 9:00 p.m. on February 18, while emergency responders were still with Arthur, Burney texted Wilke, "I love you." She also called him about 1:00 a.m. on February 19th.

Burney was told on February 19 that Arthur's death was a homicide. In a voluntary interview with police, she said she told Arthur the morning of the 18th that she and Michelle were picking up Richardson in Oklahoma City and she would take the kids to the mall in Tulsa. Burney said that she and the teenagers returned to the house at about 5:00 p.m. She said Richardson stayed in the car while she talked to Arthur, saying they would be home at 8:00 p.m. Arthur planned to meet a friend, Alvin Leonard. Burney said she took the teenagers to the mall, met Wilke for dinner, picked up the kids, and got home shortly before 8:00 p.m. After Burney called Leonard she found Arthur face down in the barn, surrounded by blood. Burney told officers that Arthur knew she had affairs and tolerated it as long as he didn't know the details.

Stormi Proctor, a friend of Michelle's, talked to law enforcement officers on February 22, 2011. As a result of that conversation, officers searched the Burney property and found the .22 rifle. The bullet in Arthur's head was too fragmented for a ballistics test to confirm it as the murder weapon, but Richardson admitted that he used it to shoot Arthur. Richardson's fingerprint was found on the rifle. His DNA, and that of Michelle, were not excluded as contributors from a sample on the rifle, but Burney's DNA was excluded from the sample. Richardson eventually confessed to the crime and implicated Burney and Michelle. Michelle also confessed following her arrest, and both teenagers testified against Burney. Richardson stated he had no deal in exchange for his testimony. In return for Michelle's testimony, she was prosecuted as a juvenile, and the State agreed not to seek the death penalty against Burney.

*Burney v. State*, No. F-2012-409, slip op. at 1-4 (Okla. Crim. App. Mar. 31, 2014).

The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

**Ground I: Accomplice Testimony**

Petitioner alleges in Ground I that her conviction was based on the uncorroborated testimony of her accomplices, Michelle Burney and Michael Richardson. She does not claim the evidence was insufficient to prove that Mr. Burney was murdered. Instead, she asserts the testimony of Michelle and Richardson that Richardson committed the murder at Petitioner's direction was not sufficiently corroborated. Petitioner further claims there was no independent evidence tending to connect her to Mr. Burney's murder.

Respondent alleges Michelle's and Richardson's testimony was corroborated by the testimony of the other witnesses and Petitioner's own admissions. Respondent further asserts that at most, Petitioner is claiming a violation of state law, which cannot be reviewed in a federal habeas action. *See Dennis v. Poppel*, 222 F.3d 1245, 1257 (10th Cir. 2000) ("We are bound to accept the Oklahoma court's construction of its state statutes . . . ." ), *cert. denied*, 534 U.S. 887 (2001).

In a detailed Opinion, the Oklahoma Court of Criminal rejected this claim on direct appeal:

> Burney claims in Proposition I that the uncorroborated testimony of Michelle and Richardson was insufficient to support her conviction. Accomplice testimony must be corroborated by independent evidence tending to connect the defendant with the commission of the offense. Okla. Stat. tit. 22, § 742;

5

*Pink v. State*, 104 P.3d 584, 590 (Okla. Crim. App. 2004). Accomplice testimony cannot be used in conjunction with the independent evidence to connect the defendant to the crime; the evidence may be consistent with the main story as long as it connects the defendant to the crime independently of any accomplice testimony. *Glossip v. State*, 157 P.3d 143, 152 (Okla. Crim. App. 2007); *Pink*, 104 P.3d at 590. An accomplice's testimony need not be corroborated in all material respects, as long as some independent evidence as to a material fact links the defendant to the crime. *Glossip*, 157 P.3d at 152; *Cummings v. State*, 968 P.2d 821, 830 (1998); *Bowie v. State*, 816 P. 2d 1143, 1145-46 (Okla. Crim. App. 1991). Accomplice testimony may be corroborated by circumstantial evidence. *Glossip*, 157 P.3d at 152-53. The trial court properly instructed jurors that Michelle and Richardson were accomplices as a matter of law. Not only did uncontroverted evidence establish that they could be indicted for the same offense, they were initially jointly charged with Burney.

The record does not support Burney's claim that the only evidence tending to connect her to the crime came from Richardson and Michelle. The accomplice testimony was sufficiently corroborated by independent evidence and Burney's own statements. A defendant's admission about circumstances surrounding the crime may corroborate accomplice testimony. *Delozier v. State*, 991 P.2d 22, 26 (Okla. Crim. App. 1998). Corroboration may be found where other witnesses place a defendant near the scene of the crime, or identify the defendant's vehicle as one involved in the commission of the crime. *Simpson v. State*, 230 P.3d 888, 896 (Okla Crim. App. 2010); *Glaze v. State*, 565 P.2d 710, 712-13 (Okla. Crim. App. 1977). While evidence of motive, standing alone, will not corroborate accomplice testimony, it may be considered along with other evidence to connect the defendant with the crime. *Glossip*, 157 P.3d at 153.

Independent evidence supported the accomplice testimony regarding Burney's motive. Several witnesses testified regarding the Burneys' financial troubles in the months leading up to Arthur's murder, saying their finances were strained and that Burney complained about Arthur's spending. Several witnesses also testified that, beginning in September 2010, Burney frequently said she wanted Arthur gone and wished he were dead. Stormi Proctor testified that, once after she heard Arthur criticize Michelle, Burney comforted Michelle by saying things would be better when Arthur was gone. Burney told officers that Arthur knew she had affairs and did not object as long as he didn't know who she was seeing. Despite this, Burney told her boyfriend, Wilke, that

6

Arthur was dead. Independent evidence showed that Burney texted "I love you" to Wilke, and made a late-night phone call to him the night of the murder. Independent evidence showed Burney handled the family's finances, and that she benefitted from Arthur's death through his profit-sharing plan and life insurance policies. In the fall of 2010, Michelle offered Dillian Shields several thousand dollars to kill Arthur and make it look like a hunting accident; Burney personally told Shields she would pay him.

Independent evidence also corroborates the accomplices' account of the day of the crime. School records show that Burney checked Michelle out of school that day. Independent evidence corroborates the accomplices' testimony that Burney picked up Richardson, and she admitted taking him to her house. While in Oklahoma City, Hardin and Slemp gave Michelle a pill bottle with pills to be given to Arthur. Richardson testified that Burney took the bottle. When Burney's house was searched after the crime, Slemp's pill bottle was found underneath Burney's bed. While Burney waited for Michelle in Oklahoma City, Burney texted Michelle that they had to leave, and then that they were not going to make it before Arthur got home.

Phone records corroborate the testimony that Burney texted Michelle, telling her that Arthur was home. Witnesses saw Burney, along with Michelle, stopped on the road outside her house during the time the murder was committed. A cigarette butt, like the brand Burney smoked, was found near the roadway where witnesses saw her car stopped. Phone records show Michelle, who was seen in Burney's car, received a phone communication from Richardson immediately after the shooting. Burney admitted that she dropped the teenagers at the mall and met Wilke for dinner. Wilke and the neighbors confirmed the description of Burney's rental car. When she returned home shortly before 8:00 p.m., Burney called Alvin Leonard, looking for Arthur. Although she told Leonard that Arthur's jacket and phone were on the front porch, Arthur's phone was found with his body.

Independent evidence which did not directly link Burney to the crime also corroborated the accomplice testimony. Michelle and Richardson testified that Burney gave Richardson a loaded gun; the murder weapon, a .22 rifle, was found under Burney's house. Ammunition for the weapon was found in a closet off the master bathroom. Physical evidence corroborated the accomplice
testimony that Richardson practiced shooting the .22 on the property, and a neighbor, Mikey Dillard, testified that he heard gunshots at about 5:00 p.m.,

7

about the time Richardson said he practiced shooting. Richardson's fingerprints were found on the weapon, and his DNA and Michelle's could not be excluded from DNA on the gun. Witnesses testified that Michelle was looking for someone to kill Arthur, beginning several months before the crime. Jonathan Boulton corroborated Michelle's testimony that she and Burney put something in Arthur's bottle of Mountain Dew as part of their plan to kill him. Hardin and Slemp corroborated the speaker phone call with Richardson and Michelle.

Defense counsel thoroughly cross-examined Michelle, impeaching her with her inconsistent statements and exploring her deal with the State for her testimony. Richardson, who was also thoroughly cross-examined, had no prior deal for his testimony (see Proposition II below). Defense counsel vigorously argued that the teenagers were lying about Burney's involvement to save themselves.

The jury determines the weight to give evidence and the credibility of witnesses. *Warner v. State*, 144 P.3d 838, 863 Okla. Crim. App. 2006); *Martinez v. State*, 984 P.2d 813, 824 (Okla. Crim. App. 1999). We accept "all reasonable inferences and credibility choices" supporting the jury's verdict. *Wood v. State*, 158 P.3d 467, 472 (Okla. Crim. App. 2007). Sufficient independent evidence corroborated the accomplice testimony and supported Burney's conviction. *Glossip*, 157 P.3d at 153-54; *Pavatt v. State*, 159 P.3d 272, 285 (Okla. Crim. App. 2007).

*Burney*, slip op. at 4-8.[1]

As discussed above, the OCCA's determination of the facts is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1), and this Court finds Petitioner has presented no evidence to meet her burden to rebut that presumption by clear and convincing evidence. The OCCA determined there was a sufficient factual basis to corroborate the testimony of Michelle and Richardson to link Petitioner to the murder, and there also was independent evidence, including Petitioner's own statements, connecting her to the murder.

---

[1] Parallel citations in the OCCA's Opinion are omitted in this Opinion and Order.

This court is "bound to accept the Oklahoma court's construction of its state statutes . . . ." *Dennis v. Poppel*, 222 F.3d 1245, 1257 (10th Cir. 2000) (citations omitted), *cert. denied*, 534 U.S. 887 (2001). *See also Anderson-Bey v. Zavaras*, 641 F.3d 445, 451 (10th Cir. 2011); *Parker v. Scott*, 394 F.3d 1302, 1311 (10th Cir. 2005). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)).

Here, the Court finds the OCCA's determination of this claim was not contrary to, or involved an unreasonable application of, Supreme Court law. 28 U.S.C. § 2254(d)(1). This Court further finds that the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). Ground I of this habeas petition fails.

**Ground II: Alleged Undisclosed Plea Agreement**

Petitioner next alleges she was prejudiced by the State's failure to disclose an alleged plea bargain with Michael Richardson to reduce his first degree murder charge and sentence him to a term of years. She claims this was exculpatory evidence that was withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

*Brady* held that "suppression by the prosecution of evidence favorable to an accused

9

upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court extended that holding to include evidence affecting the credibility of the government's witnesses in *Giglio*, 405 U.S. at 155.

The OCCA reviewed this claim on direct appeal, and after lengthy analysis, found there was no deal or promise of leniency before Richardson testified against Petitioner, or if there was a deal, Richardson was not aware of it:

> In Proposition II Burney claims the state concealed the deal Richardson had for his testimony--a lesser homicide charge and a sentence to a term of years rather than life--and did not correct Richardson's misleading trial testimony regarding the promises of leniency. Burney claims there is a reasonable probability that the results of the trial would have been different had this been disclosed to the defense, and argues that failure to disclose this exculpatory evidence was reversible error. Burney correctly notes that evidence of a witness's bias, credibility and motivation to testify is always relevant. *Warner v. State*, 144 P.3d 838, 861-62 (Okla. Crim. App. 2006); *Livingston v. State*, 907 P.2d 1088, 1092-93 (Okla. Crim. App. 1995). A prosecutor must disclose any material evidence favorable to the accused, including evidence that a witness has been offered an inducement for his testimony. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This duty encompasses disclosure of both formal plea agreements and any informal understanding that leniency is contingent on satisfactory testimony, which may create a strong incentive for false testimony. *United States v. Bagley*, 473 U.S. 667, 683-84 (1985); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Baker v. State*, 238 P.3d 10, 11-12 (Okla. Crim. App. (2010). We have found there was no plea agreement within the meaning of *Brady, Bagley* or *Giglio* where the record shows only a nonspecific offer to give consideration to a witness's truthful testimony in a trial during his future plea negotiations. *Wright v. State*, 30 P.3d 1148, 1156 (Okla. Crim. App. 2001).

*Burney*, slip op. at 8-9.

Petitioner filed a motion for a new trial based on this issue, and the OCCA remanded

the case for an evidentiary hearing to determine whether there was an agreement between Richardson and the State. *Id.*, slip op. at 9. Following the evidentiary hearing, the trial court filed its findings of facts and conclusions of law with the OCCA. The trial court made the following findings:

> After carefully considering the sufficiency, weight, and credibility of the witnesses, and the exhibits admitted into evidence, this Court finds that the State did not enter into an undisclosed agreement with Michael Richardson with respect to the testimony he would give against Patricia Burney.

*Burney*, slip op. at 10 (quoting *State v. Burney*, No. CF-2011-88B (Wagoner County Dist. Ct. June 11, 2013)).

> Even if the negotiations were interpreted as a "deal" between Mr. Thorp [Wagoner County Assistant District Attorney] and Mr. Henry [Richardson's defense attorney], the materiality of the plea agreement would hinge on how it affected Mr. Richardson's testimony. Mr. Henry testified that he never communicated to Mr. Richardson that he had a deal with the prosecutor. Therefore, any deal by perceived by Mr. Henry could not have been known by Mr. Richardson and could not have affected his testimony.

*Id.*

> . . . [T]he trial court's factual findings are supported by the record. The trial record shows that the State consistently told defense counsel that Richardson had not been promised anything for his testimony. Testimony at the evidentiary hearing supports the trial court's conclusion that Richardson was made no promises before his testimony and that he was unaware of any specific potential deals which might have been discussed. The trial court's factual findings are supported by evidence, and we agree with the trial court's conclusions. *Wright*, 30 P.3d at 1156; *Glossip v. State*, 29 P.3d 597, 602 (Okla. Crim. App. 2001). We find that the prosecutor did not withhold material evidence favorable to the defendant, and did not mislead the jury.

*Burney*, slip op. at 12-13.

11

After careful review, this Court finds Petitioner has failed to show how the OCCA's decision on this issue--that there was no undisclosed plea agreement with Richardson prior to his testimony against Petitioner, and thus no constitutional violation--is contrary to, or an unreasonable application of, Supreme Court law. This ground for habeas relief is meritless.

**Ground III: Other Crimes or Bad Character Evidence**

Petitioner alleges in Ground III that the trial court improperly allowed evidence of other crimes or bad character evidence to be introduced at trial. She claims she was prejudiced by testimony concerning a false burglary claim she made a few months before the murder. In that incident, Petitioner falsely claimed that someone broke into her house and stole a credit card, cash, and guns. She also complains of the testimony by Richardson and Michelle about an obscene video Michelle made on her cell phone and sent to Richardson while Petitioner was driving her to Oklahoma City to pick up Richardson on the day of the murder. The OCCA denied relief on these issues:

> In Proposition III Burney claims that the trial court erroneously admitted evidence of other crimes or bad acts. Burney objected to the evidence at trial, preserving the issue for appeal. A defendant should be convicted by evidence of the crime charged, not evidence of other crimes or bad acts. *Burks v. State*, 594 P.2d 771, 772, *overruled in part on other grounds by Jones v. State*, 772 P.2d 992 (Okla. Crim. App. 1989). Evidence of other crimes may be admitted to show motive, intent, absence of mistake or accident, identity, or common scheme or plan. *Lott v. State*, 98 P.3d 318, 334-35 (Okla. Crim. App. 2004); Burks, 594 P.2d at 772. We review admission of other crimes for abuse of discretion. *Jones v. State*, 128 P.3d 521, 540 (Okla. Crim. App. 1979). . . . The State filed a *Burks* notice stating it intended to use the evidence at issue to prove motive and a lack of mistake. For every witness, the trial court gave a limiting instruction before admitting this other crimes testimony, advising jurors they could not consider the evidence as proof of guilt or innocence.

> *Lott*, 98 P.3d at 334-35. Burney argues that the instruction did not negate the unfair prejudice of this evidence.

*Burney*, slip op. at 13.

The OCCA found there was no error in admitting the testimony about Petitioner's false burglary claim to show her financial motive for murdering her husband. *Burney*, slip op. at 14. While the OCCA found error in admission of the testimony about the obscene video, it also found beyond a reasonable doubt that the testimony did not influence the outcome of the trial. *Id.* at 15 (citing *Stouffer v. State*, 147 P.3d 245, 264 (Okla. Crim. App. 2006)).

State court evidentiary rulings are based on questions of state law and "may not provide habeas corpus relief . . . unless [those rulings] rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotations omitted); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1277 (10th Cir. 1999) (applying the same standard to review a state court's decision to admit evidence of prior bad acts). This Court finds the OCCA's decision regarding the admissibility of the evidence under law was not contrary to, or an unreasonable application of, Supreme Court law, and it did not deprive Petitioner of a fundamentally fair trial. This ground for habeas corpus relief is denied.

**Ground IV: Photographs**

Petitioner alleges in Ground IV that the trial court erroneously allowed the admission of photographs of the crime scene and of the victim at the crime scene. She asserts the

photographs were gruesome and cumulative. She also objects to the post-autopsy photographs as irrelevant. The OCCA found no merit in this claim:

> The photographs showed the crime scene and the fatal wound. *Pavatt*, 159 P.3d at 290. Because the gunshot wound in this case was difficult to see--indeed, law enforcement and the medical examiner's investigator at the scene could not find it--the post-autopsy photographs aided jurors in understanding the wound's nature and the medical examiner's testimony. *Mitchell v. State*, 235 P.3d 640, 655 (Okla. Crim. App. 2010).

*Burney*, slip op. at 16.

The OCCA interpreted Oklahoma law regarding this issue. "Federal habeas review is not available to correct state law evidentiary errors; rather, it is limited to violations of constitutional rights." *Smallwood*, 191 F.3d at 1275 (citing *Estelle*, 502 U.S. at 67-68). It is well settled under the AEDPA that a federal habeas court is bound by a state court's interpretation of its own state laws. *Anderson-Bey*, 641 F.3d at 451; *Hawkins v. Mullin*, 291 F.3d at 662-63. "Section 2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citations and quotations omitted). This Court finds the admission of the photographs of the crime scene and of the victim's body did not deprive Petitioner of a fundamentally fair trial. Habeas corpus relief is not warranted.

**Ground V: Jury Instruction**

Petitioner claims in Ground V that the trial court erred in not giving her requested jury instruction on assessing witness credibility. The record shows the trial court instead gave

14

jurors OUJI-CR 2d 10-8 regarding witness credibility. The OCCA found no error:

> A trial court should give the uniform instructions where they accurately state the applicable law. *Fontenot v. State*, 881 P.3d 69, 84-85 (Okla. Crim. App. 1994). Hanson v. State, 72 P.3d 40, 46 (Okla. Crim. App. 2003). Error in instructions will not require relief if, taken as a whole, the instructions accurately state the applicable law. *Norton v. State*, 43 P.3d 404, 409 (Okla. Crim. App. 2002). There was no error here. The trial court gave the appropriate uniform instruction on witness credibility. As the State notes, the court also properly instructed jurors on accomplice testimony. Taken as a whole, the uniform instructions properly informed jurors how to assess the testimony of all the witnesses, including Michelle and Richardson.

*Burney*, slip op. at 17.

> "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981)), *cert. denied*, 525 U.S. 852 (1998); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."), *cert. denied*, 514 U.S. 1115 (1995). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Maes*, 46 F.3d at 984 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

*Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999).

Here, the Court finds Petitioner has failed to show the alleged state law error regarding jury instructions rendered her trial fundamentally unfair. Therefore, habeas relief cannot be granted on this claim.

**Ground VI: Cumulative Error**

15

Finally, Petitioner claims the accumulation of errors deprived her of a fair trial. The OCCA found the error in the admission of irrelevant testimony regarding the video in Ground III was harmless. *Burney*, slip op. at 17. "Where a single error has been addressed, there is no cumulative error. *Id.* (citing *Bell v. State*, 172 P.3d 622, 627 (Okla. Crim. App. 2007).

In a federal habeas corpus action, a federal habeas court can undertake a cumulative-error analysis only if there are two or more errors to aggregate. *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013) (quotation omitted). *See also Gonzales v. Tafoya*, 515 F.3d 1097, 1126 (10th Cir. 2008) (holding that cumulative error analysis only applies where there are errors to accumulate).

The Court finds there were no constitutional errors to aggregate in this action. Furthermore, Petitioner has failed to show that the OCCA's ruling on this claim was contrary to, or un unreasonable application of, Supreme Court law. This ground for relief also must be denied.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). She also has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529

U.S. 473, 484 (2000). A certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 19th day of September 2017.

*[signature: Ronald A. White]*

Ronald A. White
United States District Judge
Eastern District of Oklahoma